UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

PILAR URRESTA, ZITA CABRERA and
CARLOS LEAL, on behalf of themselves and
all others similarly situated,

                          Plaintiffs,         10 Civ. 8277

  -against-                                               OPINION

MBJ CAFETERIA CORP. d/b/a MBJ FOOD
SERVICES, INC., MBJ LIC CORP.,
MBJ JV INC., MBJ DOWNTOWN INC.,
MICHAEL GELLES, RICHARD HALEM
and JOAQUIN VASQUES,

                          Defendants.

------------------------------------------X

A P P E A R A N C E S:

      Attorneys for Plaintiff

      BERANBAUM MENKEN, LLP
      80 Pine Street, 33rd Floor
      New York, NY 10005
      By:  Bruce E. Menken, Esq.

      Attorneys for Defendants

      LITTLER MENDELSON
      900 Third Avenue
      New York, NY 10022
      By:  Andrew P. Marks, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/11

**Sweet, D.J.**

Defendants MBJ Cafeteria Corp., d/b/a MBJ Food Services, Inc., MBJ LIC Corp., MBJ JV Inc., MBJ Downtown Inc., Michael Gelles, Richard Halem and Joaquin Vasques (collectively, "Defendants" or "MBJ") have moved pursuant to Rule 12(b)(6) F. R. Civ. P. to dismiss the "living wage" claim under New York City Administrative Code § 6-109(a) set forth in the putative collective and class action complaint of plaintiffs Pilar Urresta ("Urresta"), Zita Cabrera ("Cabrera") and Carlos Leal ("Leal") (collectively, the "Plaintiffs"). Defendants also seek dismissal of all of Plaintiff Cabrera's claims. Based upon the conclusions set forth below, the motion is granted.

**Prior Proceedings**

The Plaintiffs' complaint brings a putative collective and class action alleging that Defendants' (1) failed to pay overtime, in violation of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) failed to pay overtime, in violation of the New York Minimum Wage Act, New York Labor Law Article 6 § 190; and (3) failed to pay Plaintiffs the living wage pursuant to the living wage schedules issued by the New

1

York City Comptroller, in violation of the New York City Administrative Code § 6-109 ("Living Wage Law"). The collective claims are asserted pursuant to 29 U.S.C. § 216(b) and the class claims pursuant to Federal Rule of Civil Procedure 23. The complaint was filed on November 2, 2010.

The complaint alleges that MBJ provides food services at the LaGuardia Community College cafeteria, located in Long Island City, Queens, where Plaintiffs either work or worked. MBJ provides these services pursuant to a contract with Fiorello H. LaGuardia Community College Auxiliary Enterprises Corp. ("Enterprise Corp."). See Joaquin Vasques Decl. In Support of Defs. Mot. to Dismiss, ¶ 2 & Ex. A.

Plaintiffs' complaint contains the following paragraphs:

> 79. At all times relevant to this action, Plaintiffs and the putative class were employed by Defendants within the meaning of New York Administrative Code § 6-109a(15) and were covered employees within the meaning of the New York City Administrative Code § 6-109a(16).
>
> 80. At all times relevant to this action, Defendants constituted city service contractors within the meaning of the New York City Administrative Code § 6-109a(10).

81. At all times relevant to this action, Plaintiffs and the putative class were engaged in food services work within the meaning of the New York City Administrative Code § 6-109a(8).

82. At all times relevant to this action, Plaintiffs worked under a city service contract within the meaning of the New York City Administrative Code § 6-[109a(10)].

The instant motion was heard and marked fully submitted on June 1, 2011.

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

3

on its face.'" Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

The Second Circuit has "held that for the purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6): '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).

Plaintiffs argue that the Court should not consider this contract in ruling on Defendants' partial motion to dismiss. Pls.' Memo. at 3 (citing <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered[.]"). Should the Court consider the contract, Plaintiffs request that the motion be converted to a Rule 56 motion and be afforded an opportunity to engage in discovery. However, "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." <u>Mangiafico</u>, 471 F.3d at 398. Here, the Plaintiffs allege that they "worked under a city service contract within the meaning of the New York City Administrative Code § 6-109a(10)" and that as a result Defendants are "city service contractors" who are obligated to pay Plaintiffs the living wage. Compl. ¶¶ 80-82. The contract under which MBJ provides cafeteria services to LaGuardia Community college is integral to the complaint and appropriately considered by the court.

## The Contract At Issue Is Exempted By The Administrative Code From The Living Wage Law

The Administrative Code defines a "City Service Contract" as "any written agreement between any entity and a contracting agency whereby a contracting agency is committed to expend or does expend funds and the principle purpose of such agreement is to provide . . . food services . . . . This definition shall not include contracts with not-for-profit organizations . . . ." N.Y.C. Admin. Code § 6-109(a)(10). A "contracting agency" is defined as "the city, a city agency . . . or an institution or agency of government, the expenses of which are paid in whole or in part from the city treasury or the department of education." Id. at (a)(13). Plaintiffs do not allege facts, either in their complaint or opposition to Defendants' motion, suggesting Enterprise Corp.'s expenses to be paid in whole or in part from the city treasury or department of education. Instead, Plaintiffs, in opposing Defendants' motion, have cited a 2004 consolidated financial statement of eighteen Auxiliary Enterprise Corporations at CUNY schools, speculating that Enterprise Corp. could have received "college support," "office space," or other "donated services" from LaGuardia College. However, the 2004 financial statement

6

does not establish that Enterprise Corp. received any donated office space or services at any time. As such, Plaintiff has provided insufficient facts to allege that Enterprise Corp.'s expenses were paid either directly or indirectly by the city treasury or department of education.

In addition, the MBJ contract is not a "city service contract" because the contracting agency, Enterprise Corp., does not "expend funds." To the contrary, the terms of the contract state that Enterprise Corp. will receive funds from MBJ. As set forth in Section 6 of the Food and Vending Services Contract, MBJ remits monthly commissions to Enterprise Corp. based on MBJ's gross sales from food, catering and vending. See Pls.' Ex. A at 12-13. Because the definition of "city service contract" requires the contracting agency to expend funds, N.Y.C. Admin. Code § 6-109(a)(10), and because Enterprise Corp. is not expending funds under its contract with MBJ, the MBJ contract is not a "city service contract."

Finally, the MBJ contract is not a "city service contract" because Enterprise Corp. is a not-for-profit corporation. The Code expressly excludes from the definition of a city service contract "contracts with not-for-profit

7

organizations". N.Y.C. Admin. Code § 6-109(a)(10). Using a statutory interpretation analysis, Plaintiffs contend that this exception is limited to contracts where the city service contractor is the not-for-profit entity. Pls.' Memo. at 5-7. However, the Administrative Code is not written so narrowly as to exclude only those contracts with not-for-profit city service contractors. The Code plainly excludes "contracts with not-for-profit organizations" from its definition of "city service contract." N.Y.C. Admin. Code § 6-109(a)(10). MBJ's contract is a contract with a not-for-profit organization, and, accordingly, the Living Wage Law is inapplicable.

Plaintiffs contend that, even if Enterprise Corp. is not a contracting agency, the contract between MBJ and Enterprise Corp. is effectively a contract between MBJ on one side, and CUNY and LaGuardia Community College on the other. Under this interpretation, Plaintiffs argue that CUNY colleges, including LaGuardia Community College, constitute "contracting agencies" under the Living Wage Law and that the not-for-profit exception is not intended to shield private corporate subcontractors, such as MBJ. In support of their argument that CUNY and LaGuardia Community College are "contracting agencies," Plaintiffs cite a 1990 opinion from the Corporation Counsel of

8

the City of New York discussing the issue of which state or quasi-state entities are subject to various provisions of the New York City Charter. Pls.' Memo at 10. However, this opinion does not address CUNY, LaGuardia Community College, or the Living Wage Law. See N.Y.C. Corp. Counsel Op. Letter 11-90 (1990). Furthermore, MBJ does not have a contract with CUNY or LaGuardia Community College, as the contract states in the very first paragraph that it is a contract between Enterprise Corp. and MBJ:

> THIS CONTRACT is made January 1, 2005 by and between Fiorello H. LaGuardia Community College Auxiliary Enterprise Corporation (the "Corporation"), a New York not-for-profit corporation located at 31-10 Thompson Avenue, Long Island City, NY 11101 and organized for the purposes of providing certain services to and for the benefit of the community of LaGuardia Community College ("College") of The City University of New York, and MBJ Cafeteria Corporation d/b/a MBJ Food Services, Inc., a New York corporation with a principal place of business at 445 West 59th Street, New York, NY 10019 (the "Contractor").

Pls.' Ex. A.

The contract is signed by Fiorello H. LaGuardia Community College Auxiliary Enterprise Corporation. See id. The renewal agreement is also made by and between MBJ and Fiorello H. LaGuardia Community College Auxiliary Enterprise Corporation.

9

See id. Additionally, because the Code defines "city service subcontractor" as an entity "that is engaged by a city service contractor to assist in performing any of the services to be rendered pursuant to a city service contract," N.Y.C. Admin. Code §6-109(a)(12), MBJ cannot be considered a city service subcontractor.

MBJ's contract with Enterprise Corp. is not a "city service contract" covered by the Administrative Code, Plaintiffs are not employed pursuant to a city service contract, and, as a result, Plaintiffs are not entitled to the Code's living wage for food service workers. This claim is therefore dismissed.

**An Administrative Determination Is A Necessary Prerequisite To A Living Wage Law Claim**

The Administrative Code contains a procedural prerequisite to maintaining a private right of action based on failure to pay New York City's living wage. The grant of a private right of action is set forth:

> (2) Enforcement by Private Right of Action. (a) When a final determination has been made and such determination is in favor of a covered employee, such covered employee may . . . institute an action in any

>court of appropriate jurisdiction against a covered
>employer found to have violated this section.

N.Y.C. Admin. Code § 6-109(e)(2).

A determination can be made after the comptroller, on his own initiative or on a complaint by an employee or union, "conduct[s] an investigation to determine the facts relating thereto," and "report[s] the results of such investigation and hearing to the contracting agency, who shall issue such order, determination or other disposition." Id. at (e)(1)(a). When the final determination is issued in favor of the employee, an employee may assert a private right of action. See Id. at (e)(2)(a).

The Administrative Code does allow for a direct court action for claims of discrimination or retaliation. Section 6-109(b)(5), the subsection on retaliation and discrimination, states: "Any covered employee subjected to any action that violates this subsection may pursue any administrative remedies or bring a civil action pursuant to subsection (e) of this section in a court of competent jurisdiction." This language would be superfluous if an administrative complaint under subsection (e) of the Code were optional, rather than required. The available court action for retaliation and discrimination

11

contains a limitations period running from the date of the alleged violation, which Plaintiffs have contended "presupposes the existence of cases where no administrative complaint was filed prior to the commencement of a private action." Pls.' Memo. at 12. That provision, however, does not exempt a living wage claim.

Under the Administrative Code, the Plaintiffs cannot bring a court action until a final administrative determination has been made. Because no final determination has been made in this case, Plaintiffs' living wage claim cannot be brought via this private right of action.

**Plaintiff Cabrera's Complaint Is Time Barred**

The statute of limitations for living wage claims is three years. N.Y.C. Admin. Code § 6-109(e)(2)(c). According to the Complaint, Plaintiff Cabrera's last day of employment was in July 2007. Compl. ¶ 53. Plaintiffs, however, did not file their complaint until October 27, 2010, more than three years after Plaintiff Cabrera's employment ended. As such, the statute of limitations bars Plaintiff Cabrera's living wage claims. Similarly, the statute of limitations also bars

Cabrera's FLSA claims. The FLSA's statute of limitation is two years, although the limitations period can be extended an additional year for willful violations. See 29 U.S.C. § 255(a); Clarke v. JPMorgan Chase Bank, N.A., No. 08 Civ. 2400 (CM)(DCF), 2010 WL 1379778, *10-13 (S.D.N.Y. Mar. 26, 2010) (finding FLSA claims time-barred); Abdrabo v. New York - Worker Comp. Bd., No. 03 Civ. 7690 (DLC), 2005 WL 1278539, *2 (S.D.N.Y. May 27, 2005) (dismissing FLSA claims as time-barred where former employee filed FLSA claims nearly five years after employment ended). Even applying the FLSA's longest available statute of limitation, Cabrera's federal wage claims are barred.

A district court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if all of the claims over which the federal court has original jurisdiction have been dismissed. 28 U.S.C. §1367(c)(3). See McPherson v. NYP Holdings, Inc., 227 Fed. Appx. 51, 54 (2d Cir. 2007) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)); Podell v. Citicorp Diners Club, Inc., 859 F. Supp. 701, 706-707 (S.D.N.Y. 1994) (declining to

13

exercise supplemental jurisdiction over plaintiff's state law claims even though claims against two other defendants were proceeding, as plaintiff's claims "rightfully belong in state court" and "only the barest of pre-trial proceedings" had been completed).

Factors a district court may consider in deciding whether to exercise supplemental jurisdiction include "the values of judicial economy, convenience, fairness, and comity." Keady v. Nike, Inc., 23 Fed. Appx. 29, 32 (2d Cir. 2001). Here, only a complaint has been filed. Dismissal would not be unfair or manifestly inconvenient for Plaintiff Cabrera since "only the barest of pre-trial proceedings" have been completed, Podell, 859 F. Supp. at 706, and dismissal of the pendent state law claims would not run afoul of the interests of judicial economy. Furthermore, the remaining plaintiffs seek to assert state law claims as a class action. Plaintiff Cabrera's interests would be protected as a member of that class.

**Conclusion**

Based upon the conclusions set forth above, the Defendants' motion is granted and the Plaintiffs' New York City

"living wage" claims and Plaintiff Cabrera's claims are dismissed.  Leave to replead within twenty days is granted.

It is so ordered.

New York, NY
October 17, 2011

                                                                  /s/ Robert W. Sweet
                                                                 ROBERT W. SWEET
                                                                    U.S.D.J.